UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELENA STURDZA,<br>                          Plaintiff,<br>     v.<br>UNITED ARAB EMIRATES, *et al.*,<br>                          Defendants. | Civil Action No. 98-2051 (BJR)<br><br>ORDER ON DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE KENNETH BRITZ AND RENATA HOLOD AS EXPERT WITNESSES |

Before the Court is a motion *in limine* brought by Defendant United Arab Emirates ("UAE") seeking to exclude Kenneth Britz and Renata Holod as expert witnesses (hereinafter "Def's Mot."). Having reviewed the briefs and all relevant materials, the Court grants the motion, for the reasons stated below.

I.     BACKGROUND

Plaintiff Elena Sturdza ("Sturdza") brought suit against UAE on October 26, 1998, alleging several causes of action. *See* Complaint, Dkt. #1. In her claim of copyright infringement, which is the only claim that survives to the present day, Sturdza alleges that the UAE copied (or permitted her competitor in a design competition to copy) her architectural designs for a planned embassy building. First Amended Complaint, Dkt. #3 ("Compl."), ¶ 73. Both Sturdza and former defendant Angelos Demetriou submitted designs to the UAE's design competition in 1993. *Id.* ¶¶ 13-14. The UAE selected Sturdza and began contract negotiations. *Id.* ¶¶ 21, 29-34. However, the UAE never executed a final contract with Sturdza. *Id.* ¶¶ 35, 39. Instead, the UAE contracted with Demetriou to design and build the embassy building. *Id.* ¶ 42. Demetriou

1

revised his 1993 designs and submitted new versions in 1997. *Id.* ¶ 46. Sturdza alleges that the UAE infringed on her copyright by providing Demetriou with her design, or access to it, and by copying her design for submission to regulatory authorities and construction of the building. *Id.* ¶¶ 72-73. Disputed issues in this case include the similarity between the designs, the aspects of the designs that are protectable by copyright, and the extent to which Islamic conventions or the UAE's competition manual dictated the elements of Sturdza's and Demetriou's designs.

The parties were instructed to designate experts on or before September 30, 1999. *See* Def's Mot. at 3; *Sturdza v. United Arab Emirates*, Civil Action No. 98-2051, 2000 U.S. Dist. LEXIS 22090, at *10, n. 4 (D.D.C. Oct. 30, 2000). On October 13, 1999, UAE received an "Expert Witness Report" by Kenneth Britz, dated October 8, 1999. Def's Mot. Exh. A. UAE acknowledged receipt of the report by letter dated October 13, 1999. *See* Plaintiff's Opposition to Defendant's Motion *in limine* to Exclude Kenneth Britz and Renata Holod as Expert Witnesses ("Pl's Opp."), Exh. II.

The October 8, 1999 Britz report is a little over one page long, single spaced. Britz's opinions, which concern the similarities between Sturdza's design and that of her competitor, Demetriou, appear in three paragraphs at the beginning, followed by a paragraph on qualifications and a paragraph on fees. *Id.* In the report, Britz explained that he was shown "study sketches and preliminary drawings" from Sturdza, and "[Sturdza's] design competition entry as well as that of Angelos Demetriou & Associates." *Id.* He also noted that he was told the entries were "submitted to the competition sponsor on approximately the same date." *Id.* Britz stated that he "was asked to examine both entries and offer an opinion as to whether the two designs bore a resemblance to one another and to what extent." *Id.* The entirety of Britz's comparison paragraph appears below:

> The two designs share the same orientation of front, side and rear facades to the streets surrounding the site. Both have aggregations of space, of the same size and shape, arrayed in bilateral symmetry about an axis running east-west through the center of the site. Both have major elements of space surrounding a large, square, multi-storied central open space, covered by a dome. Both continue this same plan geometry through the same number of floors. Many functional or programmatic elements appear in the same general location within the overall building envelope. So the basic horizontal geometry, shapes of spaces, shape of the building perimeter, overall massing, fenestration, and disposition of horizontal and vertical circulation elements are substantially similar. It appears as though both designs are derived from the same conception of how the building is to be organized and its architectural ideas expressed.

*Id.* Britz concluded "in [his] professional opinion, based on the graphic material presented to me, that the two designs are substantially similar." *Id.*

At the time, UAE raised no objection concerning the timeliness or adequacy of Britz's report. Sturdza designated no other experts. On November 19, 1999, Mark Lane, one of Sturdza's attorneys, withdrew. *See* Notice of Withdrawal, Dkt. #59. Then, on December 8, 1999, Sturdza moved to withdraw Steve Teppler, another attorney, and to stay proceedings. *See* Dkt. #61. On December 21, 1999, Judge Kollar-Kotelly set new deadlines and ordered Sturdza's current counsel to assist in finding replacement counsel. *See* Order, Dkt. #66. The court set the close of discovery as December 31, 1999. *See* Scheduling Order, Dkt. #43. Deadlines for Sturdza's response to interrogatories and document production, but not for any other discovery, were extended through June 16, 2000, to allow time for Sturdza to secure new counsel. *See* Dkt. #66, #77, #82.

Demetriou (originally also a defendant)[1] moved for summary judgment. *See* Dkt. #91. On July 31, 2000, Sturdza filed an opposition to summary judgment, to which she attached a Declaration of Kenneth Britz ("Britz Dec."), dated July 31, 2000, a sheet of Britz's qualifications, and a "Narrative for the Comparison of the Sturdza and Demetriou Designs for

---

[1] On December 12, 2012, this Court dismissed the claims against Demetriou. *See* Order of Dismissal of Demetriou Defendants, Dkt. #250 (Dec. 12. 2012).

the U.A.E. Competition." Pl's Opp. Exhs. III-V. Sturdza also attached a "Declaration of Renata Holod" ("Holod Dec."), dated July 28, 2000, with Holod's full CV. Pl's Opp. Exh. VI.

Britz stated in his July 2000 declaration that he had been asked to "review the summary judgment memorandum and exhibits filed by [Defendants] and to render an opinion with respect to certain factual assertions contained therein." Britz Dec. ¶ 4. He opined that "[t]here are substantial similarities between the design of the U.A.E. embassy submitted by Sturdza and the design submitted by Demetriou." *Id.* ¶ 6. In his July 2000 declaration, Britz compared Sturdza's 1993 submission to both Demetriou's original 1993 design and to Demetriou's 1997 revisions. *Id.* ¶¶ 6, 8, 9. Britz opined that the similarities were "too substantial" to be explained or required by the UAE's program manual. *Id.* ¶ 7. Having reviewed Holod's declaration, Briz also found the similarities "too substantial" to be explained or required by "any conventions or strictures of Islamic art and architecture." *Id.* ¶ 8. The three-page "Narrative," to which Britz attached various drawings and blueprints, compares elements and identifies similarities between the designs. Pl's Opp. Exh. V.

Holod's declaration states that she was "asked to render an opinion with regard to certain factual matters, specifically whether or to what degree the facades of the Sturdza and Demetriou designs are similar, and whether any similarities between these facades are dictated by conventions in Islamic architecture or requirements of the Program Manual for the U.A. E. embassy design competition." Holod Dec. ¶ 8. Holod opined that Sturdza's "selection and arrangement of the architectural components in her 1993 façade are not specifically dictated by Islamic convention." *Id.* ¶ 11. After comparing the two designs, and opining on the degree to which each could be seen as borrowing from Islamic architectural conventions, Holod concluded that "the façade of Demetriou's 1997 design is substantially similar to the face of Sturdza's 1993

design in regard to particular elements…as well as in regard to the selection and arrangement of these elements to form a unified whole." *Id.* ¶ 20.

At summary judgment, the defendants objected to Sturdza's introduction of these reports on two grounds: first, that a plaintiff cannot offer expert testimony as to "substantial similarity" in a copyright infringement case, and secondly, that the experts were not properly designated. *See Sturdza v. U.A.E.*, 2000 U.S. Dist. LEXIS 22090, at *10, n. 4. Judge Kollar-Kotelly granted the motion for summary judgment on Sturdza's copyright claim, without consideration of the expert opinions, because she found that the designs were not substantially similar. *Id.* at *24. The court made clear that it was not deciding whether Sturdza improperly included the expert materials in her opposition to summary judgment.[2]

On appeal, the DC Circuit reversed the district court's decision on copyright infringement. *Sturdza v. UAE*, 281 F.3d 1287, 1299 (D.C. Cir. 2002). The Court of Appeals took issue with the district court's method of comparing the two designs, and after undertaking its own comparison concluded that the close factual question of substantial similarity could not

---

[2] In a footnote addressing Britz and Holod, the court stated the following:

> In status hearings, Plaintiff has informed the Court that she has consulted with an expert since early in these proceedings. Nonetheless, she did not designate any experts prior to the September 30, 1999, designation deadline. Discovery closed December 31, 1999. Plaintiff was represented by counsel throughout this period. Because of her failure to properly and timely designate experts, it is impossible for the Court to know whether either of the experts upon whom she relies in her opposition is the person with whom she has consulted since the beginning of the litigation.
>
> The court has not relied on any of Plaintiff's expert materials in resolving these motions. Accordingly, notwithstanding Defendants' arguments and Plaintiff's failure to designate her experts, the Court refrains from deciding whether Plaintiff has improperly included their materials in her opposition.
>
> The court did not rely on the expert materials because it found them conclusory and uninformative with regard to the alleged copyright infringement. Were these experts to offer trial testimony similar to the reports and declarations appended to Plaintiff's opposition, the Court would likely determine that the testimony "does not assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Ev. 702.

*Id.* at *10, n. 4.

be decided on summary judgment, but rather was a jury question. *Id.* The Circuit went on to quote the Second Circuit on expert testimony in copyright cases: "we do not intend to disturb the traditional role of lay observers in judging substantial similarity in copyright cases that involve the aesthetic arts, such as music, visual works or literature." 281 F.3d at 1300-01 (quoting *Computer Assocs., Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693, 713–14 (2d Cir.1992)).

## II. LEGAL STANDARD

Fed. R. Civ. P. 26 provides, in pertinent part:

> Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence … at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1)(A).

A district court has "'broad discretion in determining whether to admit or exclude expert testimony.'" *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871, 895 (D.C. Cir. 2010) (quoting *United States v. Gatling*, 96 F.3d 1511, 1523 (D.C. Cir. 1996)). Under

Fed. R. Evid. 702, one of the requirements for the admission of expert testimony is that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Trial courts act as gatekeepers, only admitting expert testimony that is both relevant and reliable. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) (applying *Daubert* to non-scientific expert testimony).

### III. DISCUSSION

UAE makes three arguments in its motion to exclude Britz and Holod as expert witnesses. First, UAE argues that Judge Kollar-Kotelly already determined at summary judgment that Sturdza failed to properly and timely designate the two experts, and that the expert materials were conclusory and uninformative. Def's Mot. at 2-4. Second, UAE contends that the disclosures for each expert fail to satisfy Fed. R. Civ. P. 26 and Fed. R. Evid. 702. *Id.* at 4-6. Finally, UAE argues that expert opinions may not be introduced on the question of "substantial similarity," because that question is decided from the perspective of an "ordinary reasonable person." *Id.* at 6.

Sturdza relies on the fact that UAE did not object at the time to the late designation of Britz, and never sought to depose Britz or Holod despite many years of notice. Pl's Opp. at 4. She draws the Court's attention to a July 1998 letter from Britz offering "preliminary comments" on the similarity between the designs, which Sturdza originally filed on January 21, 1999. *See id.* at 4, Exh. I. As justification for the delay in designating Britz, Sturdza points to problems with her own counsel, reflected in the motions to withdraw. *Id.* at 5. She also argues that the expert

7

reports would assist the jury and were detailed enough to satisfy Fed. R. Civ. P. 26 and fulfill its purpose, which is to eliminate surprise and reduce waste in discovery. *Id.* at 5-6.

### A. Plaintiff's Proposed Expert Renata Holod

Sturda does not contest the untimeliness of Holod's report. She did not file Holod's report until July 31, 2000, and then did so in the context of an opposition to a motion for summary judgment. This was a full ten months after the deadline for designating experts, and long after discovery had closed. Regardless of whether Holod's report complied with Fed. R. Civ. P. 26 or Fed. R. Evid. 702, and regardless of whether a court should permit Holod to opine as to "substantial similarity," the Court will not ignore the lateness of Holod's designation. Rule 37 prohibits the use of such a witness "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1)(A). Sturdza offered no justification for the failure to timely designate Holod. The Court acknowledges the turnover of counsel that Sturdza experienced, but as Judge Kollar-Kotelly noted, Sturdza did have representation at relevant times. *See* 2000 U.S. Dist. LEXIS 22090, at *10, n. 4. More importantly, the designation of an expert in response to a motion for summary judgment, after discovery had closed, could not help but prejudice UAE.

### B. Plaintiff's Proposed Expert Kenneth Britz

As for Britz, the Court notes at the outset that it is unclear from the language of Britz's initial report, dated October 8, 1999, what set of designs he was purporting to compare. Britz stated that he was shown "[Sturdza's] design competition entry as well as that of Angelos Demetriou & Associates," which were, in his understanding, "submitted to the competition sponsor on approximately the same date." Pl's Opp., Exh. II. This strongly suggests that Britz compared Sturdza's and Demetriou's 1993 competition entries only, and not Demetriou's later revisions. Those later revisions play a crucial role in Sturdza's theory of liability. *See* Compl. ¶ 72-73. To

8

the extent that the similarities between the 1993 entries has any relevance to the case, there is no specific detail as to which materials Britz actually reviewed for that initial report. That the Court cannot resolve even this basic ambiguity demonstrates why Britz's report fails to satisfy Rule 26.

Rule 26 requires "a complete statement of all opinions the witness will express and the basis and reasons for them," "the facts or data considered by the witness in forming them," and "any exhibits that will be used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(iii). Britz's initial report may have contained a complete statement of his opinion, but the "basis and reasons" for the opinion, and the underlying "facts and data" receive only glancing attention in a single paragraph (out of three total paragraphs that comprise the entire opinion). There are no attached designs or drawings, nor even any specific reference to which designs or drawings Britz consulted. Britz supplied a series of cursory comparisons, explaining vaguely that the designs have the "same orientation of front, side and rear facades," that they "have aggregations of space, of the same size and shape, arrayed in bilateral symmetry about an axis running east-west through the center of the site," that they both "have major elements of space surrounding a large, square, multi-storied central open space, covered by a dome," with this same geometry through each floor, and that "many functional or programmatic elements appear in the same general location within the overall building envelope." *Id.* These statements, with no reference to specific background materials, cannot clear the threshold for Rule 26 disclosures.

Sturdza also missed the designation deadline for Britz's initial report by about two weeks. The Court acknowledges the possibility that Sturdza may have encountered difficulties with counsel, but nevertheless, she was represented during that period. She has not explained how and why the alleged difficulties with counsel prevented her from properly and timely designating an expert with whom, as Sturdza emphasizes, she had been in communication for over a year.

9

*See* Pl's Opp. at 2. It is true that UAE could have objected at the time, and that UAE has not identified any particular harm it suffered due to the lateness of Britz's initial report. However, even if the Court were inclined to forgive the two week delay, Britz's October 8, 1999 report falls well below the requirements of Rule 26.

Britz's later declaration, by contrast, contains much more detail as to the basis for his opinions, and includes the source materials on which he based his comparisons. *See* Pl's Opp. Exhs. III, V. It also appears to compare Sturdza's 1993 design to Demetriou's 1993 *and* 1997 designs. Britz. Dec. ¶¶ 6, 8, 9. But these materials, like Holod's report, were submitted ten months after the deadline, in an opposition to summary judgment. As with Holod, Sturdza has no legitimate justification for the delay. It would frustrate the fundamental purposes of Rule 26 to permit a party to thrust an expert through the door with a cursory, one-page report of uncertain relevance, then submit a supplementary full report much later, long after discovery had closed and in the context of briefing on dispositive motions. Because Sturdza failed to timely and adequately designate her expert witnesses, the Court grants UAE's motion.

Furthermore, the Court concurs with Judge Kollar-Kotelly's observation that the reports are "conclusory and uninformative," at least with respect to Britz's initial report and much of Holod's report. *See* 2000 U.S. Dist. LEXIS 22090, at *10, n. 4. The Court is confident that the jury can grasp the parties' arguments concerning the similarity of the architectural façade and design without the experts' aid. Both the district court and the Court of Appeals, on the evidence in the record and without expert opinions, undertook thorough and detailed comparisons of architectural elements. *See* 2000 U.S. Dist. LEXIS 22090, at *10-24; 281 F.3d at 1297-99.

As the DC Circuit explained on appeal, "substantial similarity" is to be assessed from the perspective of an ordinary lay observer. *Sturdza*, 281 F.3d at 1296 ("Substantial similarity exists

where the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value"). Both Britz and Holod explicitly offered conclusions as to the "substantial similarity" of the two designs, and Britz did so repeatedly. *See* Britz "Expert Witness Report," Def's Mot. Exh. A; Britz Dec. ¶¶ 6-9; Holod Dec. ¶ 20. These are opinions as to the ultimate question of fact, which rests with the trier of fact and is to be decided according to the perception of an ordinary observer. *Sturdza*, 281 F.3d at 1296; *Whitehead v. CBS/Viacom, Inc.,* 315 F. Supp. 2d 1, 10 n. 6 (D.D.C. 2004); *Prunte v. Universal Music Grp.*, 563 F. Supp. 2d 41, 43 (D.D.C. 2008).

This case is unlike the highly technical cases cited by the DC Circuit, in which courts have determined that expert testimony may be needed to help jurors assess substantial similarity. *See Sturdza*, 281 F.3d at 1300 (citing *Whelan Assocs. v. Jaslow Dental Lab., Inc.,* 797 F.2d 1222, 1232 (3d Cir. 1986) (permitting expert testimony due to the "complexity and unfamiliarity [of computer programs] to most members of the public") *and Computer Assocs.*, 982 F.2d at 713-14 (permitting expert evidence on substantial similarity in computer program infringement case)). Here the trier of fact will compare facades and basic architectural designs. Thus, in this case at least, no expert testimony is needed to assist the trier of fact in determining whether the works are so similar "that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression." *Sturdza*, 281 F.3d at 1296; *see also Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 731 (8th Cir. 2006) (rejecting expert evidence in architecture copyright case, where substantial similarity was the only issue before the jury); *Computer Assocs.,* 982 F.2d at 713–14 (permitting expert in computer program copyright dispute, but clarifying the court's intent not to "disturb the traditional role of lay observers in

judging substantial similarity in copyright cases that involve the aesthetic arts, such as music, visual works or literature"); *T-Peg, Inc. v. Vermont Timber Works, Inc.*, 459 F.3d 97, 116 (1st Cir. 2006) (explaining, in the context of an architectural copyright dispute, that "the need for expert testimony may be greater in cases involving complex subject matters," and leaving to the district court's discretion the determination of whether expert testimony, if admissible, would help the trier of fact).

**NOW, THEREFORE**, it is, hereby**:**

    **ORDERED** that Plaintiff UAE's Motion *in limine* to Exclude Kenneth Britz and Renata Holod as Expert Witnesses is **GRANTED.**

    November 5, 2013

                                                                         BARBARA J. ROTHSTEIN
                                                                         UNITED STATES DISTRICT JUDGE